IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

MARSHALLE (SHELLEY) PFAB,

    Plaintiff,

vs.

UNITED WISCONSIN INS. CO.,
d/b/a UNITED HEARTLAND,

    Defendant.

No. C10-1024

RULING ON MOTION FOR
SUMMARY JUDGMENT

## TABLE OF CONTENTS

*I.*    *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *RELEVANT FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.*    *The Parties.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B.*    *November 2006 Work Injuries.* . . . . . . . . . . . . . . . . . . . 3
    *C.*    *Treatment of the Injuries and Workers' Compensation Claim.* . . . . . . 3

*IV.*  *LEGAL STANDARD FOR SUMMARY JUDGMENT.* . . . . . . . . . . . . 12

*V.*   *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *A.*    *The Parties' Claims.* . . . . . . . . . . . . . . . . . . . . . . . . 13
    *B.*    *First-Party Bad Faith.* . . . . . . . . . . . . . . . . . . . . . . . 13
    *C.*    *Analysis.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*VI.*  *SUMMARY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*VII.* *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 21) filed by Defendant United Wisconsin Insurance Co., d/b/a United Heartland ("United Heartland") on November 14, 2011; and the Resistance (docket number 23) filed by Plaintiff Marshalle Pfab ("Pfab") on December 8, 2011. The parties' requests for oral argument are denied. Pursuant to Local Rule 7.c, the Motion for Summary Judgment will be decided without oral argument.

## II. PROCEDURAL BACKGROUND

This case was initiated on September 1, 2010, with Pfab filing a Petition in the Iowa District Court for Dubuque County. On October 4, 2010, Pfab filed an Amended Petition (docket number 3) in the Iowa District Court. In her amended petition, Pfab claimed entitlement to recover compensatory damages, punitive damages, and attorney fees, as a consequence of United Heartland's alleged bad faith (Count I), libel (Count II), and slander (Count III). United Heartland removed the action to the United States District Court for the Northern District of Iowa on October 7, 2010. On October 8, 2010, United Heartland filed an Answer (docket number 5) generally denying the material allegations contained in the amended petition, and asserting certain affirmative defenses.

On October 12, 2010, Pfab filed a Motion to Remand to state court. *See* docket number 6. On January 11, 2011, Judge Edward J. McManus entered an Order denying Pfab's motion to remand. *See* docket number 9. On January 31, 2011, the Court adopted a scheduling order proposed by the parties. On November 14, 2011, United Heartland timely filed the instant motion for summary judgment. On December 12, 2011, the Court adopted the Stipulation for Partial Dismissal (docket number 22) filed by the parties on December 8, 2011, and dismissed counts II and III of Pfab's amended petition. *See* docket number 24. Trial is scheduled before the undersigned on March 19, 2012.[1]

---

[1] With the consent of the parties, this case was referred to the undersigned
(continued...)

## III. RELEVANT FACTS

### A. The Parties

Plaintiff Marshalle Pfab is a resident of Dubuque County, Iowa. She was employed at Hillcrest Family Services in Dubuque, Iowa, as a youth care worker. Defendant United Heartland is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. United Heartland is a fire and casualty insurance company that also provides worker's compensation insurance coverage. United Heartland is licensed to write coverage in the State of Iowa.

### B. November 2006 Work Injuries

On November 4, 2006, Pfab injured her right wrist while attempting to restrain an 11-year old resident at Hillcrest Family Services, who was ignoring verbal commands, punching and kicking Pfab, and trying to run out of the building. The next day, on November 5, Pfab was involved in another altercation with the same child. In the evening, Pfab and a co-worker attempted to assist the child to his room, but the child grabbed Pfab's co-worker by the hair and threw himself to the ground, taking the co-worker with him. While on the ground, the child began flailing his arms and legs. Pfab intervened to help her co-worker and was kicked three times in the face, including underneath her jaw. Pfab timely notified her employer of her injuries.

### C. Treatment of the Injuries and Workers' Compensation Claim

On November 8, 2006, following her work-related injuries on November 4 and 5, Pfab met with Dr. Jon R. Yankey, M.D., complaining of persistent pain in her right wrist and left-side of her face. Upon examination, Dr. Yankey diagnosed Pfab with right wrist contusion and facial contusion. He recommended conservative treatment, including ice therapy, over-the-counter ibuprofen, and use of a wrist splint. Pfab had a follow-up

---

[1](...continued)
Magistrate Judge for all further proceedings, pursuant to 28 U.S.C. § 636(c). *See* Order of Reference (docket number 12) at 2.

appointment with Dr. Yankey on November 13, 2006. Pfab reported that the pain in her face was "nearly" resolved. Her wrist, however, was unchanged from her previous visit. Dr. Yankey continued conservative treatment for Pfab's wrist pain. On November 28, 2006, Pfab had another follow-up appointment with Dr. Yankey. Pfab reported "good improvement" with her injuries, and complained of only "mild intermittent" pain in her wrist. However, Pfab also reported that she had developed pain in her jaw. Specifically, Dr. Yankey noted that:

> [Pfab] states that she has developed pain in her jaws [sic] and she points to the TM joints as the site of the pain. She states that she has developed a cracking/popping sensation at times with certain jaw motions as well as pain. However, she states that she has had prior problems with TMJ[2] syndrome and has had treatment for it up until about 5 months ago. She had been doing fairly well since then. She states that during the injury of 11/4/2006 [sic] she was kicked in the jaw as well as in the face.

*See* United Heartland's Appendix (docket number 21-3) at 00095. Dr. Yankey continued to recommend conservative treatment. On December 6, 2006, Pfab met with Dr. Yankey, again, for a follow-up appointment. At this appointment, Pfab told Dr. Yankey that she had significant pain in her jaw. Dr. Yankey noted that:

> [Pfab] again indicated today that she has had problems with the TM joints previously. She states that she has had 'TMJ syndrome' previously. She states that she has been treated by her dentist for this previously but not in the past several months.

---

[2] TMJ stands for Temporomandibular Joint, which is the joint that connects the lower jaw (mandible) to the temporal bone of the skull. The joint allows the jaw to move up and down and side to side, allowing individuals to talk, chew, and yawn. Temporomandibular disorders include problems with the jaw, jaw joint, and surrounding facial muscles that control chewing and moving the jaw. "These disorders are often incorrectly called TMJ, which stands for temporomandibular joint." *See* http://www.webmd.com/oral-health/guide/temporomandibular-disorders.

4

> [Pfab] again indicated that she feels her current jaw pain is related to the injury of 11/4/2006 [*sic*] as she was 'kicked in the jaw as well as in the face.'

*See* United Heartland's Appendix (docket number 21-3) at 00097. Dr. Yankey recommended continued conservative treatment and further evaluation of Pfab's jaw.

In February 2007, United Heartland took Pfab's recorded statement concerning her injuries. United Heartland questioned Pfab about TMJ problems prior to her November 2006 work injuries. Pfab stated that she had some minor problems with TMJ prior to her injuries. Specifically, Pfab stated that she met with her dentist because she "had a little bit of crunchiness in there. I didn't have jaw, you know, I wasn't having a lot of problems, just expressed to him, you know, little concern, nothing major. . . . Um he did not, you know, classify it as TMJ."[3] After Pfab's statement was taken, United Heartland authorized health care treatment for Pfab, including treatment for her TMJ symptoms.

On January 3, 2008, Pfab met with Dr. Timothy King, M.D., regarding her jaw pain. Upon examination, Dr. King found "severe" tenderness of the masseter insertions, which was worse on the right than on the left.[4] Dr. King diagnosed Pfab with myofascial dysfunction, right masseter. Dr. King recommended steroid injections and a BOTOX injection as treatment. On January 23, 2008, Pfab received a steroid injection in the right-side of her jaw. On February 27, 2008, Pfab met with Dr. King for a follow-up appointment. Pfab indicated that the steroid injection she received on January 23, 2008 offered her about two weeks of pain relief. Dr. King recommended wearing a bite guard and a soft diet as treatment.

In March 2008, a new claims representative, Chris Kuklinski ("Kuklinski") was assigned to Pfab's account. Kuklinski reviewed Pfab's medical records, and noted that she had been treated for TMJ issues prior to her work injuries. Based on this review of Pfab's

---

[3] *See* United Heartland's Appendix (docket number 21-3) at 00075.

[4] The masseter is a "large muscle that raises the lower jaw." *See* http://www.merriam-webster.com/medlineplus/masseter.

medical records, Kuklinski questioned whether Pfab's jaw problems were related to her work injury. Specifically, in her deposition, Kuklinski stated that "[m]y review of the medical records with preexisting medical treatment for a TMJ condition, upon my review of the file led me to question causation."[5] Based on Kuklinski's concerns regarding the work-relatedness of Pfab's jaw problems, United Heartland sought an independent medical examination.

On August 26, 2008, Pfab filed two Original Notice and Petitions with the Iowa Workers' Compensation Commissioner, alleging entitlement to workers' compensation benefits as a result of the incidents on November 4 and 5, 2006. On September 19, 2008, United Heartland filed Answers to the workers' compensation petitions. In its answers, United Heartland asserted, as a defense, that Pfab's injuries were not the result of her employment.

On March 17, 2009, approximately one year after United Heartland initially sought an independent medical review, United Heartland received a report from Dr. Richard T. Fleck, D.D.S. In his report, Dr. Fleck opined that:

> It is apparent from the records reviewed, that Mrs. Pfab had a preexisting significant parafunctional habit of bruxing, clenching, and grinding and temporomandibular joint problems which were not resolved prior to her work place accidents on November 4th and 5th, 2006. Parafunctional habits of this nature are the cause of temporomandibular joint symptoms, as well as muscle myalgia.

*See* United Heartland's Appendix (docket number 21-3) at 00136. Dr. Fleck concluded that Pfab's jaw problems were related to her preexisting condition, not her November 2006 work injuries. Specifically, Dr. Fleck stated:

> Dr. King opined that Mrs. Pfab's problem was not an underlying joint abnormality but rather a muscle myalgia. I am in agreement with Dr. Kings [*sic*] opinion. There was no

---

[5] *See* United Heartland's Appendix (docket number 21-3) at 00013; Kuklinski's Deposition, 52:11-13.

> mention of right side muscle tenderness in regard to examination shortly after the November 4, 2006 and November 5, 2006 work occurrences. A muscle myalgia is more likely caused by an ongoing parafunctional habit of bruxing and grinding than a single incidence of trauma. Additionally, the only indication of the trauma inflicted upon Mrs. Pfab's face was diffuse swelling superior and lateral to her left eye. Mrs. Pfab's muscle myalgia primarily involves the masseter muscle on the right side. There was no mention of right side muscle tenderness in regard to examination shortly after the November 4 and November 5, 2006 work occurrences. Moreover, Mrs. Pfab repeatedly reported temporary resolution of the pain in her right masseter muscle following Dr. King's steroid injections, with a return of pain after a number of weeks. This is completely consistent with the steroid injections resolving and overriding the adverse effects of the ongoing parafunctional bruxing and grinding habits, with the ongoing parafunctional habits causing the symptoms to return after the effectiveness of the Kenalog injections had worn off.

*Id.* In summary, Dr. Fleck opined that:

> Since it is my opinion that Mrs. Pfab's jaw problems and symptoms were caused by parafunctional habits of grinding and bruxing, which were unrelated to her work injury of November 5, 2006, I do not believe any continued or future treatment would be related to and or necessitated by her work injury dated November 5, 2006.

*Id.* at 00138. Following Dr. Fleck's report, United Heartland denied further payments to Pfab for TMJ treatment.

On July 1, 2009, a workers' compensation hearing was held. Deputy Workers' Compensation Commissioner Stan McElderry ("Deputy Commissioner") presided over the hearing. Prior to the hearing, the parties submitted a "Hearing Report and Order Approving Same" which identified disputed issues and stipulations in the case. *See* United Heartland's Appendix (docket number 21-3) at 00150-00151. Specifically, the parties identified three disputed issues: (1) whether the alleged injury was a cause of temporary

disability during a period of recovery; (2) whether the alleged injury was a cause of permanent disability; and (3) the claimant's entitlement to permanent disability benefits and the amount of any benefits owed to the claimant. *Id.* at 00150. On the issue of medical benefits, the parties indicated that there was no dispute.[6] *Id.* at 00151.

In discussing the disputed issues on Pfab's November 5, 2006 claim, the Deputy Commissioner questioned the parties' attorneys[7] as follows:

> Deputy Commissioner: Parties are stipulating that if there is disability that it is industrial, and looks like really the only two issues are whether there is permanency and if there is the

---

[6] The issue in this case is concerned with United Heartland's nonpayment of a medical bill associated with Pfab's TMJ condition. According to Pfab the unpaid bill "arose about five weeks before the hearing and it was unknown to Plaintiff and her attorney that it was unpaid." *See* Pfab's Statement of Undisputed Material Facts in Resistance to Motion for Summary Judgment (docket number 23-3) at 2; ¶ 4; *see also* Pfab's Appendix (docket number 23-4) at 1; Affidavit of Les V. Reddick ("The only bill from Dr. Timothy King that United Heartland did not pay was one that arose approximately five weeks before the hearing date and the non-payment of the bill was not known to either this Affiant or Ms. Pfab. No notice was given to us that the medical bill was not being paid, at any time before the work comp hearing."). In its response to Pfab's statement of undisputed facts, United Heartland denies that there was only one unpaid medical bill prior to the hearing, and states that "it was not clear from the bills in question that the treatment was actually related to the TMJ condition that was the subject of the claim." *See* United Heartland's Response to Plaintiff's Statement of Undisputed Material Facts (docket number 25) at 1; ¶ 4. The Court finds United Heartland's response confusing because the record is clear that it denied payment of the medical bill because it was related to Pfab's TMJ condition, and it did not believe that her condition was related to her 2006 work injury. *See* United Heartland's Appendix (docket number 21-3) at 00179 (medical bill for TMJ treatment with notation providing that on May 29, 2009, United Heartland denied the claim and stated that "no additional TMJ will be paid.").

[7] At the Workers' Compensation hearing, Pfab was represented by attorney Les V. Reddick. Mr. Reddick no longer represents Pfab. She is currently represented by attorney Rand S. Wonio. Similarly, United Heartland was represented by attorney Nathan R. McConkey at the Worker's Compensation hearing. In the instant litigation, United Heartland is represented by Patrick D. Smith and Amy R. Teas.

8

| | |
|---|---|
| | extent, unless I am missing something. |
| Mr. Reddick: | Causation I think. |
| Mr. McConkey: | Your Honor, I think even though that we are stipulating to a date of injury on 11-5-2006, I think the fighting issue is whether it involves the jaw and the condition of TMJ. That is what we are disputing is that even though she had an injury we are disputing causation between that injury and her condition in relation to her jaw. |
| Deputy Commissioner: | Okay. |
| Mr. McConkey: | And also there might be some medical bills. Maybe not in the past but I think we paid, but future entitlement in relation to this TMJ condition would be disputed, Your Honor. |
| Deputy Commissioner: | Okay. But that is -- I think that is the kind of issue that takes care of itself based on my findings on the issues, and I am not being asked to approve any bills at this point. It is not really an issue that I am deciding. So if I am understanding correctly there is a stipulation that there was an injury, there is a dispute as to whether or not what follows from that is causally connected to employment. Agreement that if I do find disability it is industrial and that the commencement date is March 13, 2009, I think those are the issues that I am being asked to decide? |
| Mr. Reddick: | That is correct. |
| Mr. McConkey: | That is correct, Your Honor. |

*See* United Heartland's Appendix (docket number 21-3) at 00157; Hearing Transcript at 5:15-7:1.

On August 21, 2009, the Deputy Commissioner issued an Arbitration Decision. *See* United Heartland's Appendix (docket number 21-3) at 00158-00164. In his decision, the Deputy Commissioner determined that Pfab was entitled to 10 weeks permanent partial disability benefits for the November 4, 2006 incident, and 15 weeks permanent partial disability benefits for the November 5, 2006 incident. *Id.* at 00163. Specifically, the Deputy Commissioner found that the November 5, 2006 work injury (multiple kicks to Pfab's face) "permanently exacerbated a pre-existing condition" (Pfab's difficulties with her jaw or TMJ).[8] On June 9, 2010, the Workers' Compensation Commissioner filed an Appeal Decision affirming the August 21, 2009 Arbitration Decision.[9] *Id.* at 00165-00166.

On June 14, 2010, following the workers' compensation Appeal Decision, Pfab requested reimbursement for an unpaid medical bill related to treatment of her TMJ condition. According to Pfab, she "continues to have a balance for TMJ treatment that was placed on her personal account after payment was denied by the workers' compensation carrier."[10] As a result of her medical bill not being paid, Pfab asserts that

---

[8] *See* United Heartland's Appendix (docket number 21-3) at 00163.

[9] The award of 10 weeks permanent partial disability benefits for the November 4, 2006 incident was modified to 5 weeks due to scrivener's error by the Deputy Commissioner. *See* United Heartland's Appendix (docket number 21-3) at 00165.

[10] *See* Pfab's Statement of Undisputed Facts in Resistance to Motion for Summary Judgment (docket number 23-3) at 4; ¶ 10. In its response to Pfab's statement of undisputed facts, United Heartland admits that Pfab has a balance with her medical care provider, but states that "there is no evidence in the summary judgment record or the record before the Workers' Compensation Commissioner showing that the bills in question were related to the treatment of TMJ, or were reasonable or necessary." *See* United Heartland's Response to Plaintiff's Statement of Undisputed Material Facts (docket number
(continued...)

she cannot get treatment for her TMJ condition because she cannot afford to pay for the treatment out-of-pocket.[11] Pfab filed the instant petition alleging bad faith for United

---

[10](...continued)
25) at 2; ¶ 10. Again, as the Court pointed out in footnote 6, the record contains a medical bill for TMJ treatment for Pfab with a notation providing that on May 29, 2009, United Heartland denied the claim and stated that "no additional TMJ will be paid." *See* United Heartland's Appendix (docket number 21-3) at 00179.

[11] *See* Pfab's Statement of Undisputed Material Facts in Resistance to Motion for Summary Judgment (docket number 23-3) at 4; ¶ 4. Specifically, in her deposition, Pfab stated:

> Q: Are you currently receiving any treatments for problems with your jaw?
> A: No.
> Q: Have you received any treatment within the last year for problems with your jaw?
> A: No. . . .
> Q: Do you recall when the last time was you saw a doctor for problems with your jaw?
> A: I believe it's been well over two and a half years.
> Q: Do you have any doctor visits scheduled in the future for problems with your jaw?
> A: No. Can I explain.
> Q: Yes, please do.
> A: The reason I don't have any is because due to a bill not being paid I'm not allowed to make an appointment to see the same doctor as I cannot afford it. . . .
> Q: Explain to me what you mean by you're not being allowed to see Dr. King.
> A: I had discussed with the Medical Associates Work Comp billing department multiple times a bill that was not paid for my Work Comp case and should have been paid from the decision. Due to the outstanding bill of I believe it's close to $4,000, they'll not see me unless I am able to either pay the bill or have money up front, which I believe is $1,000, if not more, for a Botox injection in my face, and I don't have the resources to pay for that.

(continued...)

Heartland's refusal "to pay [her] workers' compensation benefits that are owed and known by [United Heartland] to be owed."[12] Additional facts which are relevant to the issues will be set forth below.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship*

---

[11](...continued)

*See* Pfab's Appendix (docket number 23-4) at 10-11; Pfab's Deposition at 44:21-46:23.

[12] *See* Amended Petition at Law and Jury Demand (docket number 3) at 2; ¶¶ 9-13.

*Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

### A. The Parties' Claims

United Heartland asserts that it is entitled to summary judgment on Pfab's bad faith claim for two reasons. First, United Heartland argues that it is not liable for bad faith because there was no adjudication by the Workers' Compensation Commissioner that Pfab's unpaid medical bills were compensable. Second, United Heartland argues that it is entitled summary judgment on Pfab's bad faith claim because its decision to cease payment of medical bills for Pfab's TMJ disorder was "fairly debatable" as a matter of law.

United Heartland claims summary judgment is appropriate because it had a right to obtain an independent records review and opinion from Dr. Fleck regarding Pfab's jaw problems and their relation to her November 2006 work injuries, and had a reasonable basis to change its claim determination from compensable to not compensable upon receipt of Dr. Fleck's opinion. That is not, however, the gravamen of Pfab's claim. Instead, Pfab argues that United Heartland acted in bad faith by not paying her medical bills *after* the Commissioner found that her TMJ condition was related to her work injuries in November 2006.

### B. First-Party Bad Faith

In *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790 (Iowa 1988), the Iowa Supreme Court recognized a tort cause of action for first-party bad faith against an insurer. *Id.* at 794. The Iowa Supreme Court extended the first-party bad faith tort to workers' compensation cases in *Boylan v. American Motorists Insurance Co.*, 489 N.W.2d 742, 744 (Iowa 1992). In *McIlravy v. North River Insurance Co.*, 653 N.W.2d 323 (Iowa 2002), the Iowa Supreme Court explained that "[b]ad faith claims are applicable to workers' compensation insurers because they hold the discretionary power to affect the statutory

13

rights of workers, which clearly reflects their obligation to act in good faith in the exercise of this authority." *Id.* at 329.

In order to establish a claim for first-party bad faith, the insured must prove: "'(1) that the insurer had no reasonable basis for denying benefits under the policy, and (2) the insurer knew, or had reason to know, that its denial was without basis.'" *Id.* (quoting *United Fire & Casualty Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002)). "'The first element is an objective one; the second element is subjective.'" *Rodda v. Vermeer Manufacturing*, 734 N.W.2d 480, 483 (Iowa 2007) (quoting *Bellville v. Farm Bureau Mutual Insurance Co.*, 702 N.W.2d 468, 473 (Iowa 2003)).

In order for a claim to be "fairly debatable" as to either a matter of fact or law, a reasonable basis for denying insurance benefits must exist. *Rodda*, 734 N.W.2d at 483; *see also Gibson v. ITT Hartford Insurance Co.*, 621 N.W.2d 388, 396 (Iowa 2001) ("A reasonable basis exists for denying insurance benefits if the claim is 'fairly debatable' as to either matters of fact or law."). "A claim is 'fairly debatable' when it is open to dispute on any logical basis." *Bellville*, 702 N.W.2d at 473 (citation omitted). "The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim." *Id.* (citations omitted) Therefore, the primary focus is on the "existence of a debatable issue, not on which party was correct." *Id.* (citation omitted).

Generally, courts determine whether a claim is "fairly debatable" as a matter of law. *Rodda*, 734 N.W.2d at 483; *see also Gardner v. Hartford Insurance Accident & Indemnity Co.*, 659 N.W.2d 198, 206 (Iowa 2003) ("'Where an objectively reasonable basis for denial of claim actually exists, the insurer cannot be held liable for bad faith as a matter of law.' *Morgan v. Am. Family Mut. Ins. Co.*, 534 N.W.2d 92, 97 (Iowa 1995).").

Turning to the second element, "[e]ven when the insurer lacks a reasonable basis for its denial of a claim, liability for bad faith will not attach unless the insurer knew or

should have known that the basis for denying its insured's claim was unreasonable." *Bellville*, 702 N.W.2d at 474 (citations omitted). Negligent or poor investigation or evaluation of a claim by an insurer is relevant for determining whether an insurer "should have known its denial lacked a reasonable basis." *Id.* However, "'an improper investigation, standing alone, is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim.'" *Id.* (quoting *Reuter v. State Farm Mutual Automobile Insurance Co., Inc.*, 469 N.W.2d 250, 254-55 (Iowa 1991)).

## C. Analysis

United Heartland argues that it was within its rights to seek an independent medical opinion after a review of Pfab's file raised concerns about whether Pfab's TMJ condition was related to her 2006 work injuries. United Heartland also argues that its decision to discontinue payment of Pfab's TMJ medical bills was reasonable, following receipt of Dr. Fleck's report. The Court finds United Heartland's arguments to be misplaced. Pfab's bad faith claim is directed at United Heartland's refusal to pay medical bills for TMJ treatment *following* the Deputy Commissioner's arbitration decision and the Commissioner's appeal decision, where it was determined that Pfab's TMJ disorder is related to her November 5, 2006 work injury.

While compensability may have been "fairly debatable," based on Dr. Fleck's opinions, *prior* to the Workers' Compensation hearing, the Court cannot say – as a matter of law – that it was fairly debatable after. A jury could conclude from the facts in this case that United Heartland had a reasonable basis to deny Pfab's TMJ medical bills following the Commissioner's decision, but a reasonable jury could also conclude that it did not. *See Bellville*, 702 N.W.2d at 473 (discussing the "fairly debatable" standard). In other words, the Court finds that a jury could conclude from the facts presented that United Heartland had no reasonable basis for denying Pfab's TMJ-related claims after the Commissioner's decision, and knew that its denial was without basis. *See McIlvary*, 653 N.W.2d at 329.

15

The record demonstrates that United Heartland's own counsel, Mr. McConkey, had concerns that United Heartland's refusal to pay Pfab's TMJ medical bills following the decisions of the Workers' Compensation Deputy Commissioner and Commissioner was not "fairly debatable," and communicated those concerns to United Heartland. In email correspondence with a United Heartland claims representative, Mr. McConkey wrote:

> Okay, I've asked every other attorney in the firm and I have a split response on those medical bills. 1/2 agree with me and say tough luck, but 1/2 say even though we had a good-faith basis in not paying when we did, we don't now given the decision by the commissioner and even though they can't be ordered by the commissioner.
>
> In an abundance of caution, I suggest you pay those medical [bills] in order to avoid a bad-faith lawsuit and all the trouble that would bring.
>
> It comes down to whether we have a good faith basis with the decision as it is to continue to deny those medical bills. I CANNOT say that we do.

*See* United Heartland's Appendix (docket number 21-3) at 00170-00171. (All caps in original.) Viewing the record in the light most favorable to Pfab, the Court determines that a genuine dispute exists regarding whether United Heartland acted in bad faith by not paying Pfab's TMJ-related medical bills after it was determined by the Commissioner that her TMJ problems were exacerbated by her work injury.

United Heartland argues that because the medical bills Pfab claims should have been paid were not presented into evidence at the workers' compensation hearing, "it had no opportunity to contest the fairness and reasonableness of the charges, whether they were reasonable and necessary, or whether they were connected to the work injury."[13] Specifically, United Heartland asserts that:

---

[13] *See* United Heartland's Brief in Support of Motion for Summary Judgment (docket number 21-1) at 9.

> The Deputy Commissioner did not rule that medical expenses were owed because none were in the record. Pfab had the opportunity to litigate the question concerning compensability of the medical expenses but did not. She should not be permitted to contest this issue again before this court, which does not have jurisdiction to hear workers' compensation disputes. . . .
>
> Any delay in the payment of Pfab's medical bills after the Workers' Compensation Commissioner's appeal decision was issued is fairly debatable as a matter of law because Pfab failed to present any medical bills at the workers' compensation hearing.

*See* United Heartland's Brief in Support of Motion for Summary Judgment (docket number 21-1) at 9.

The Court is unconvinced by United Heartland's argument. While United Heartland correctly points out that under Iowa Code section 85.20, Iowa's Workers' Compensation laws provide an exclusive remedy for injuries suffered in the course of employment, "this exclusivity principle is limited to matters surrounding a job-related injury and does not extend to subsequent dealings during which a tort may arise by reason of bad faith on the part of an employer's insurer." *Kiner v. Reliance Insurance Co.*, 463 N.W.2d 9, 12 (Iowa 1990). Here, Pfab claims that at the time of the workers' compensation hearing, she was unaware of an unpaid medical bill for treatment of her TMJ condition, and therefore, did not raise the issue at the hearing.[14] In his arbitration decision, the Deputy Commissioner found that Pfab's TMJ condition was related to the November 5, 2006 work injury, and

---

[14] *See* Pfab's Appendix (docket number 23-4) at 1; Affidavit of Les V. Reddick ("The only bill from Dr. Timothy King that United Heartland did not pay was one that arose approximately five weeks before the hearing date and the non-payment of the bill was not known to either this Affiant or Ms. Pfab. No notice was given to us that the medical bill was not being paid, at any time before the work comp hearing.").

17

thus compensable.[15] *See* Iowa Code section 85.27(1) ("The employer, for all injuries compensable under this chapter . . . shall furnish reasonable surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, ambulance and hospital services[.] . . ."); *see also Larson Manufacturing Co. v. Thorson*, 763 N.W.2d 842, 861 (Iowa 2009) ("The plain language of section 85.27(1) requires the employer to pay for all medical costs incurred as a result of an injury compensable under chapter 85."). Pfab filed the action against United Heartland alleging that United Heartland's failure to pay her medical bills relating to TMJ following the findings of the Workers' Compensation Deputy Commissioner and Commissioner to be bad faith.

Viewing the record in the light most favorable to Pfab, the Court determines that a genuine dispute exists regarding whether Pfab had knowledge of the unpaid medical bill for TMJ treatment at the time of the Workers' Compensation hearing, and whether following the finding of the Deputy Commissioner and Commissioner – that Pfab's TMJ condition was related to her November 5, 2006 work injury – United Heartland acted in bad faith by continuing to refuse to pay her TMJ medical bills. Accordingly, the Court finds that summary judgment is not appropriate.

## VI. SUMMARY

Viewing the evidence in the light most favorable to Pfab, the Court concludes that United Heartland is not entitled to summary judgment on Pfab's bad faith claim. The Court finds that there are genuine issues in dispute as to whether United Heartland acted in bad faith by not paying Pfab's TMJ-related medical bills following the finding of the Workers' Compensation Commissioner that Pfab's TMJ condition was related to her November 5, 2006 work injury.

---

[15] *See* United Heartland's Appendix (docket number 21-3) at 00163 (Deputy Commissioner's decision finding that the November 5, 2006 work injury (multiple kicks to Pfab's face) "permanently exacerbated a pre-existing condition" (Pfab's difficulties with her jaw or TMJ).

## VII. ORDER

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (docket number 21) filed by United Heartland is hereby **DENIED**.

DATED this 22nd day of December, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA