IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MARSHALLE (SHELLEY) PFAB,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED WISCONSIN INS. CO.,<br>d/b/a UNITED HEARTLAND,<br><br>Defendant. | No. C10-1024<br><br>RULING ON MOTIONS *IN LIMINE* |

On the 9th day of March 2012, this matter came on for telephonic hearing on the Motion in Limine (docket number 28) filed by the Plaintiff on February 17, 2012, and the Motion in Limine (docket number 32) filed by the Defendant on the same date. Plaintiff Marshalle Pfab was represented by her attorney, Rand S. Wonio. Defendant United Wisconsin Ins. Co. d/b/a/ United Heartland ("United Heartland") was represented by its attorney, Patrick D. Smith.

## *I. PFAB'S MOTION IN LIMINE*

Pfab's Motion *in Limine* is in two parts: First, Pfab asks that United Heartland be prohibited from "relitigating" whether or not she sustained a permanent "TMJ injury" on the job. Second, Pfab asks that the Court prohibit expert testimony by John Bickel, or otherwise instruct the jury regarding the limited purpose for which it can be used.

### *A. "Relitigating" Pfab's Work-Related Injury*

On November 5, 2006, Pfab was assaulted during the course of her employment, when she was kicked in the face by a juvenile. Pfab had a pre-existing right-sided temporomandibular joint ("TMJ") condition. Following a hearing, Deputy Workers'

1

Compensation Commissioner Stan McElderry filed an arbitration decision on August 21, 2009, finding that "the November 5, 2006 injury permanently exacerbated a pre-existing condition."[1]  In her motion, Pfab asserts that United Heartland "is legally precluded from re-litigating these issues."[2]

Referring to the causal connection between Pfab's TMJ and her work injury, United Heartland's counsel assured the Court at the instant hearing that "it is not our intention to relitigate that issue."[3]  While it is not entirely clear to the Court, United Heartland apparently intends to offer a list of exhibits introduced at the arbitration hearing, to show the jury why it was contesting Pfab's claim at that time.  That is, United Heartland had evidence prior to the arbitration hearing suggesting that Pfab's on-going TMJ problems were not caused by her being kicked in the face on November 5, 2006.  *See, e.g.*, Letter from Richard T. Fleck, DDS (Defendant's Trial Exhibit E).

Pfab concedes, however, that prior to the arbitration decision, her claim for workers' compensation benefits was "fairly debatable," thus prohibiting a finding of bad faith against United Heartland at that time.  Instead, Pfab argues that following the arbitration decision – and subsequent affirmation on appeal by Workers' Compensation Commissioner Christopher J. Godfrey – her claim for benefits was no longer "fairly debatable."  Pfab's claim for bad faith rests on United Heartland's continued refusal to pay medical benefits after that time.

In order to place Pfab's bad faith claim in context, it will clearly be necessary for the parties to introduce evidence regarding her injury, her claim for benefits, the proceedings before the workers' compensation commissioner, and United Heartland's

---

[1] Arbitration Decision (Plaintiff's Trial Exhibit 3) at 6.

[2] Pfab's Motion in Limine (docket number 28) at 2.

[3] United Heartland did not address this issue in its written resistance to Pfab's motion *in limine*.  *See* docket number 37.

subsequent refusal to pay TMJ-related medical bills. In this regard, the jury will be told that a deputy industrial commissioner found that Pfab's work injury permanently exacerbated her preexisting TMJ condition. Counsel for United Heartland assures the Court that it is not intending to "relitigate" that issue.

### B. Expert Testimony of John Bickel

Next, Pfab objects to United Heartland offering expert testimony by attorney John Bickel.[4] The substance of Mr. Bickel's testimony may be found in his letter to United Heartland's attorney, dated November 11, 2011, identified as Defendant's Trial Exhibit L. If permitted to do so, Mr. Bickel will testify that paying for medical bills is not an admission of compensability, and medical records prior to the hearing "reflected an issue" in this regard. According to Mr. Bickel, it was "not unreasonable nor unusual" for United Heartland to submit the records to a medical professional in order to obtain an opinion regarding causation. Mr. Bickel will further opine that "[n]o judicial decision exists requiring payment of the disputed unpaid medicals."[5] Furthermore, Mr. Bickel believes that "[t]here is no statutory provision or case law requiring non-submitted elements of a claim to be paid once there is an adjudication on claimed elements."[6]

In its resistance, United Heartland asserts that "it is not uncommon for expert witness testimony as to applicable standards to be presented in workers' compensation bad faith cases."[7] In support of its argument, United Heartland cites *Zimmer v. Travelers Ins. Co.*, 521 F. Supp. 2d 910 (S.D. Iowa 2007), and *Reedy v. White Consol. Indus., Inc.*, 890 F. Supp. 1417 (N.D. Iowa 1995). In those cases, the court permitted expert testimony

---

[4] Pfab apparently concedes that Mr. Bickel is an expert in workers' compensation law.

[5] Letter from John M. Bickel to Patrick D. Smith, dated November 11, 2011 (Defendant's Trial Exhibit L) at 12.

[6] *Id.*

[7] United Heartland's Resistance (docket number 37) at 2.

regarding "claims handling standards" and "adjusting procedures." Mr. Bickel will be permitted to offer similar testimony here. United Heartland apparently concedes, however, that an expert witness may not advise the jury regarding the substantive law.

To establish her first-party bad faith claim, Pfab must prove that (1) there was no reasonable basis for United Heartland to refuse to pay the medical bills following the arbitration hearing, and (2) United Heartland knew or had reason to know that there was no reasonable basis for refusing to pay the medical bills. *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007). The first element employs an objective standard, which can generally be decided as a matter of law by the court. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). The second element employs a subjective standard, which requires the jury to determine whether the "insurer knew or should have known that the basis for denying its insured's claim was unreasonable." *Id.* at 474. Thus, testimony is admissible regarding what United Heartland knew of the law at the time it refused to pay the medical bills following the arbitration hearing, or what it "should have known" at that time.

A reasonable jury could conclude that after the deputy industrial commissioner's decision was affirmed on appeal, the compensability of medical bills relating to Pfab's TMJ condition was no longer "fairly debatable." The Court does not believe that United Heartland can refuse to pay medical bills associated with a work-related injury, simply because the bills were not submitted at the arbitration hearing. The Court believes that United Heartland's reliance on *Millenkamp v. Millenkamp Cattle Co.*, (attached to United Heartland's trial brief as Exhibit A) is misplaced. In an unpublished 2-page ruling on an uncontested motion, a deputy industrial commissioner entered a *nunc pro tunc* order – without citation to authority – removing his prior reference to "past medical expenses," because none were offered at the hearing. *Millenkamp* does not address the issue, however, of whether – after an injury is determined to be work-related in the arbitration decision – the insurer has an obligation to pay medical bills which were inadvertently

4

omitted from the hearing. The Court believes that unless the insurer has a reasonable basis to believe the medical bills are not work-related, then it has an obligation to pay them. *See* Iowa Code § 85.27(1). Moreover, Pfab's claim in the instant action is not limited to the medical bills which were incurred prior to the arbitration hearing (of which only about $1,800 remains), but instead includes United Heartland's refusal to authorize future medical care associated with the work-related injury.

Here, there is some evidence that United Heartland "knew" that it had an obligation to pay medical bills following the arbitration decision. The attorney representing United Heartland before the workers' compensation commissioner wrote to a senior claims representative at United Heartland following the arbitration decision and warned him that "you are really risking a bad faith claim if you don't pay."[8] Regarding the issue of whether United Heartland "should have known" of its obligation to pay the medical bills following the arbitration decision, the Court concludes that it is subject to appropriate expert testimony. That is, a qualified expert may testify regarding what an insurer "should know" about the law.

## II. UNITED HEARTLAND'S MOTION IN LIMINE

United Heartland's motion *in limine* is in five parts: First, United Heartland asks that any evidence concerning settlement negotiations be excluded. Pfab has no objection. Second, United Heartland argues that unpaid medical bills "are admissible only for the purpose of showing the bills were not paid." That is, United Heartland argues that past medical bills are not an element of damage in this bad faith action. Third, United Heartland argues that future medical expenses are inadmissible because they are not a proper element of damage and, alternatively, that Pfab will not be able to introduce substantial evidence to support an award of future medical expenses. Fourth, United

---

[8] Email from Nathan R. McConkey to Chris Kuklinski, dated July 19, 2010 (Plaintiff's Trial Exhibit 7).

Heartland asserts that its claim file generated prior to the workers' compensation hearing is inadmissible. Fifth, United Heartland objects to any evidence regarding its "wealth."

### A. Past Medical Bills and Future Medical Expenses

If workers' compensation benefits are unreasonably delayed or denied, then there are "two distinct methods" by which an employer's workers' compensation carrier may be penalized. *McIlravy v. North River Ins. Co.*, 653 N.W.2d 323, 328 (Iowa 2001). The first method is to seek relief from the workers' compensation commissioner, pursuant to Iowa Code section 86.13. *Id.* The second method is a private cause of action brought by the employee for first-party bad faith. *Id.* at 328-29. While United Heartland recognizes that Pfab may bring a direct action for bad faith, it asserts that "the workers' compensation arena provides the exclusive remedy for recovery of such medical expenses."[9] In support of its argument, United Heartland cites *Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968 (N.D. Iowa 2006).

In *Niver*, it was undisputed that "his medical bills were paid and that he was not denied access to health care." *Id.* at 983. Niver intended to pursue other damages allegedly caused by Travelers' bad faith, however, including past and future lost wages and benefits, COBRA payments for health insurance coverage after he was terminated from his job, amounts withdrawn from his retirement account, the income tax and penalties that were required to be paid because of the withdrawal from his retirement account, and interest and dividends that would have accrued on the retirement account had the withdrawal not been made. *Id.* Travelers filed a motion *in limine*, seeking to exclude evidence relating to any item of damage other than "compensatory damages for Niver's alleged emotional distress directly and proximately caused by Travelers's denial of his claim for workers compensation benefits." *Id.* Travelers argued that "Iowa law authorizes only emotional distress damages for a first-party bad faith claim." *Id.* at 984.

---

[9] Defendant's Motion in Limine (docket number 32) at 2.

The Court in *Niver* denied Travelers' motion *in limine*, concluding the measure of damages was not limited to emotional distress.

> It is true that the primary example of such extra-contractual damages for first-party bad faith identified in *Dolan* was damages for ordinary emotional distress *caused by the insurer's bad faith*. However, courts have also contemplated that other extra-contractual damages may be appropriate.

*Niver*, 433 F. Supp. 2d at 985-86 (citing *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790 (Iowa 1988)). The Court further concluded that "the question is not whether Niver could have recovered some of the damages he seeks here on some other claim, or even what damages were caused by the underlying work-related injury, but what damages can be deemed to be proximately caused by Travelers's bad faith denial of Niver's claim for workers compensation benefits." *Id.* at 985. *See also Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001) (noting that in addition to loss of function of the mind and mental pain and suffering, the jury also awarded Gibson damages for penalties he incurred in withdrawing money early from an IRA account after ITT stopped paying benefits).

Applying these principles to the instant action, the Court rejects United Heartland's argument that Pfab's sole remedy in seeking recovery of unpaid medical expenses is a worker's compensation claim. Instead, Pfab may pursue the "distinct" remedy of filing a private action for first-party bad faith. If Pfab proves that United Heartland denied her claim for benefits in bad faith, then she is entitled to recover those damages which are legally caused by United Heartland's bad faith. Those include medical bills which are work-related and future medical expenses related to her work injury, if she can establish that they are reasonable and necessary.

> A bad faith recovery includes damages not for the original injury or disease and its resulting incapacity, but only for the damages resulting from the bad faith acts; not for the loss of earning capacity, but for the additional costs, economic hardship, or *losses due to nonpayment of amounts owed*; and not for the mental anguish of originally suffering the injury, but for being subjected to the bad faith acts. Additionally,

> upon proper proof, a bad faith claimant can recover punitive
> damages.

*Niver*, 433 F. Supp. 2d at 986 (quoting *Izaguirre v. Texas Employers' Ins. Ass'n*, 749 S.W.2d 550, 553 (Tex. App. 1988)) (emphasis added).

Therefore, the Court concludes that United Heartland's motion *in limine* regarding past and future medical expenses should be denied. Upon proper proof, Pfab is entitled to recover past medical bills and future medical expenses which were denied as a result of United Heartland's bad faith.

### B. United Heartland's Claim File

Next, United Heartland asks that Pfab be prohibited from offering portions of its claim file, arguing that "[n]othing that United Heartland did or failed to do before the date of the workers' compensation hearing is relevant to the issue of United Heartland's alleged bad faith."[10] At the time of hearing, United Heartland's counsel advised the Court that this part of the motion *in limine* is directed at Plaintiff's Trial Exhibits 11-14.[11] Following a discussion at the hearing, counsel for Pfab seemed to concede that information relating to the insurer's "reserves" should not be submitted to the jury, while counsel for United Heartland seemed to concede that remaining portions of the exhibits are probably admissible. Counsel agreed to review Exhibits 11-14 in an attempt to reach agreement regarding the admissibility of redacted exhibits. The Court will defer ruling on this portion of the motion *in limine*.

### C. United Heartland's Financial Condition

Finally, United Heartland objects to the introduction of any evidence regarding its financial condition. The Court agrees that evidence regarding United Heartland's financial

---

[10] Defendant's Motion in Limine (docket number 32) at 2-3.

[11] In the Final Pretrial Order, United Heartland did not object to Exhibit 12, and objected to only portions of Exhibit 14. According to counsel, however, this was a "mistake." Pfab's attorney stated that he had no objection to United Heartland raising its objections at this time.

condition may only be introduced after Pfab makes a *prima facie* showing for recovery of punitive damages.   United Heartland's motion *in limine* is granted conditionally.   Pfab must first seek approval of the Court before offering evidence regarding United Heartland's financial condition.

## ORDER

IT IS THEREFORE ORDERED that the Motion in Limine (docket number 28) filed by the Plaintiff and the Motion in Limine (docket number 32) filed by the Defendant are hereby **GRANTED** in part and **DENIED** in part, as set forth above.

DATED this 13th day of March, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA